IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ERNEST R. BOND,                          08-CV-6349-BR


        Plaintiff,                       OPINION AND ORDER
                                         Portland Division

v.


MICHAEL J. ASTRUE,
Commissioner of Social
Security,


        Defendant.


RICHARD F. MCGINTY
McGinty & Belcher, PC
P.O. Box 12806
Salem, OR 97309
(503) 371-9636


        Attorneys for Plaintiff


KENT ROBINSON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1053


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
Social Security Administration
**MICHAEL S. HOWARD**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104
(206) 615-2240

        Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Ernest R. Bond seeks judicial review of a final

decision of the Commissioner of the Social Security Admini-

stration (SSA) in which he denied Plaintiff's application for

Disability Insurance Benefits (DIB) under Title II of the Social

Security Act.  This Court has jurisdiction to review the

Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

    For the reasons that follow, the Court **AFFIRMS** the decision

of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

    Plaintiff filed an application for DIB on December 1,

2003, alleging a disability onset date of January 5, 2002.

Tr. 65.[1]  The application was denied initially and on

reconsideration.  An Administrative Law Judge (ALJ) held a

--------

    [1] Citations to the official transcript of record filed by
the Commissioner on March 19, 2009, are referred to as "Tr."

2 - OPINION AND ORDER

hearing on July 25, 2006.  Tr. 342-59.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on August 16, 2006, in which he found Plaintiff was not disabled and, therefore, was not entitled to benefits.  Tr. 11-30.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on October 26, 2006, when the Appeals Council denied Plaintiff's request for review.  Plaintiff appealed the decision of the Commissioner to this Court.

On September 25, 2007, pursuant to the parties' stipulation, Magistrate Judge John Jelderks issued an Order in which he remanded the matter for further proceedings and directed the ALJ to "(1) further evaluate the finding that Plaintiff has a diagnosis of somatoform disorder secondary to malingering; (2) further evaluate and weigh all of the medical evidence; and (3) further evaluate the Plaintiff's subjective complaints."  Tr. 409-10.

On remand the ALJ conducted a hearing on April 9, 2008.  Plaintiff and a VE testified.  The ALJ issued a decision on August 28, 2008, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 360-75.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.

3 - OPINION AND ORDER

## BACKGROUND

Plaintiff was born on April 13, 1954; was 52 years old at the time of the first hearing; and was 53 years old at the time of the second hearing. Tr. 65-67. Plaintiff completed high school and some college courses. Tr. 80, 170. Plaintiff has past relevant work experience as a mill-yard crew worker and supply clerk. Tr. 352-53.

Plaintiff alleges disability due to "depression, stress, [and] anxiety." Tr. 75.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 366-73.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841

(9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's RFC.  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Soc. Sec. Ruling (SSR) 96-8p.  A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20

7 - OPINION AND ORDER

C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can do.  *Tackett v. Apfel*, 180
F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy
this burden through the testimony of a VE or by reference to the
Medical-Vocational Guidelines set forth in the regulations at
20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner
meets this burden, the claimant is not disabled.  20 C.F.R.
§ 404.1520(g)(1).


## **ALJ'S FINDINGS**

On remand at Step One, the ALJ found Plaintiff has not
engaged in substantial gainful activity since January 5, 2002.
Tr. 365.

At Step Two, the ALJ found Plaintiff has the severe
impairments of anxiety disorder, somatoform disorder, and
personality disorder.  Tr. 365.

At Step Three, the ALJ concluded Plaintiff's medically
determinable impairments do not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P, appendix
1.  Tr. 20.  The ALJ found Plaintiff has the RFC "to perform a
full range of work at all exertional levels, but with the
following nonexertional limitations:  self paced work requiring
no more than occasional contact with supervisors or the general

8 - OPINION AND ORDER

public."  Tr. 368.

At Step Four, the ALJ found Plaintiff is not capable of performing his past relevant work.  Tr. 373.

At Step Five, the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 374.  Accordingly, the ALJ found Plaintiff is not disabled.


### DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly rejected Plaintiff's testimony; (2) improperly rejected the opinions of Plaintiff's examining and treating physicians; and (3) found Plaintiff can perform jobs that exist in significant numbers in the national economy.

**I.    The ALJ did not err at Step Three when he rejected Plaintiff's testimony as to the intensity, persistence, and limiting effects of Plaintiff's impairments.**

Plaintiff alleges the ALJ erred at Step Three when he failed to provide clear and convincing reasons for rejecting Plaintiff's testimony as to the intensity, persistence, and limiting effects of Plaintiff's impairments.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to

9 - OPINION AND ORDER

produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient. *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ found Plaintiff's medically determinable impairments reasonably could be "expected to produce the alleged symptoms. However, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." Tr. 368.

The ALJ noted Leslie Pitchford, Ph.D., examining psychologist, conducted a neuropsychological evaluation of Plaintiff on May 3, 2006, and subsequently found Plaintiff performed poorly on purpose. Tr. 311. Dr. Pitchford concluded Plaintiff's "test results indicated [he] has not been straight-forward. . . . [Plaintiff] indicated that a social security

award will allow him to receive his company pension now, rather than 10 years from now.  He may be exaggerating his difficulties in hopes of obtaining that benefit."  Tr. 312.  Similarly, Eugene E. Klecan, M.D., examining physician, conducted a psychiatric evaluation of Plaintiff on March 6, 2002, and concluded Plaintiff's subjective complaints "greatly exceed[ed] objective findings."  He opined "secondary gains and even primary gains are present."  Tr. 179.  Dr. Klecan noted Plaintiff's condition is medically stationary, and "no improvement is likely or for that matter necessary.  [Plaintiff] is as capable now of working at his regular job as he was prior to 1-21-02, indeed as he was one year ago and five years ago, and has no rateable permanent psychiatric impairments."  Tr. 181.  On March 5, 2003, James R. Naibert, M.D., treating physician, reported Plaintiff's stated goal of retiring on disability, and "[h]is long term goal is to buy a place up in the mountains, retire and do a lot of fishing." Tr. 192.  The ALJ noted Christopher Swan, M.D., treating physician, opined a number of times that even though Plaintiff is incapable of returning to his past work, he is capable of doing work that is not "high pressure stressful-type work."  Tr. 184, 186, 190.

On this record, the Court concludes the ALJ did not err when he rejected Plaintiff's testimony as to the intensity, persistence, and limiting effects of Plaintiff's impairments

because the ALJ provided legally sufficient reasons supported by the record for doing so.

## II. The ALJ did not err when he rejected the opinions of Drs. Kallemeyn, Cochran, and Naibert.

Plaintiff contends the ALJ erred when he rejected the opinions of Maribeth Kallemeyn, Ph.D., examining psychologist; John Cochran, Ph.D., examining psychologist; and Dr. Naibert, treating physician.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the

12 - OPINION AND ORDER

nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

A.   **Dr. Kallemeyn**

On February 9, 2004, Dr. Kallemeyn conducted a psychodiagnostic evaluation of Plaintiff.  Based on Plaintiff's self-report, Dr. Kallemeyn opined Plaintiff's "symptoms are seriously impacting his daily activities, specifically in the area of seeking and engaging in employment.  It appears that his anxiety and anxiety-related avoidance are the primary barriers to employment at this point."  Tr. 239-40.  Dr. Kallemeyn concluded "[i]t does appear that his anxiety may need to be better controlled in order to enable him to begin to approach rather than avoid the possibility of employment" and assessed Plaintiff with a GAF of 50.[2]  A GAF of 50 indicates serious symptoms or serious impairments in social or occupational functioning.

The ALJ rejected Dr. Kallemeyn's assessment of Plaintiff's GAF because, *inter alia,* Plaintiff's mental-status

---

[2] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100.  A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, few friends, unable to keep a job).

examination did not reveal any evidence of serious symptoms or impairments.  Tr. 371.  The ALJ also noted lay witness Robert Adams testified that he and Plaintiff spent five or ten hours a week together doing activities such as fishing and target shooting and that Plaintiff has daily, "normal" interactions with neighbors and friends.  Tr. 86-91.

The ALJ also found Dr. Kallemeyn's assessment is contradicted by Dr. Swan, treating physician, who opines in his treatment notes that Plaintiff is only precluded from performing his past work.  Tr. 371.

On this record, the Court concludes the ALJ did not err when he rejected Dr. Kallemeyn's assessment of Plaintiff's GAF at 50 because the ALJ provided clear and convincing reasons based on substantial evidence in the record for doing so.

**B.    Dr. Cochran**

On April 28, 2006, Dr. Cochran conducted a psychiatric evaluation of Plaintiff and opined Plaintiff suffered moderately severe[3] difficulties performing activities within a schedule, maintaining regular attendance, sustaining an ordinary routine without special supervision, working in coordination with or in

---

[3] The form used by Dr. Cochran defines "moderately severe" as "able to perform designated task or function, but has or will have noticeable difficulty (distracted from job activity) more than 20 percent of the work day or work week (*i.e.*, 1 ½ hours per day or 1 day per week up to two hours/day or one-half to one day/week."  Tr. 340.

proximity to others without being distracted by them, "completing a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness, responding appropriately to changes in the work setting, traveling to unfamiliar places or using public transportation, and setting realistic goals.  Tr. 340-41. Dr. Cochran assessed Plaintiff with a GAF of 50.

The ALJ rejected Dr. Cochran's opinions and noted he did not address or acknowledge Plaintiff's credibility issues including Plaintiff's tendency to exaggerate symptoms or his secondary gain motivation.  The ALJ also noted Dr. Cochran's opinion was contradicted by Dr. Swan, who found Plaintiff is capable of work that is not high-stress, including work in a parts department, supply management work, or clerical work.  Tr. 372.  In addition, although Dr. Cochran opined Plaintiff suffered moderately serious difficulty "adhering to basic standards of neatness and cleanliness," Dr. Cochran observed Plaintiff was "well groomed." Moreover, Plaintiff did not allege difficulty with grooming or

15 - OPINION AND ORDER

hygiene.  Tr. 333.  As noted, Robert Adams testified he and
Plaintiff spent five to ten hours a week together doing
activities such as fishing and target shooting and Plaintiff has
daily, "normal" interactions with neighbors and friends.
Plaintiff's interactions contradict Dr. Cochran's opinion that
Plaintiff suffers moderately severe difficulty interacting
appropriately with the general public, getting along with peers
without distracting them or exhibiting behavioral extremes, and
maintaining socially appropriate behavior.

On this record, the Court concludes the ALJ did not err
when he rejected Dr. Cochran's opinion because the ALJ provided
clear and convincing reasons based on substantial evidence in the
record for doing so.

**C.  Dr. Naibert**

On July 12, 2004, Dr. Naibert opined Plaintiff

> has been unable to work due to his anxiety
> disorder and his depressive symptomology, and I do
> not feel that he will ever really be able to work,
> certainly not in a competitive work environment
> . . . .  I do not foresee that [Plaintiff] will
> improve enough to ever be fully employable, even
> though if he had a very sedate, very ordered, and
> nonactive job he may be able to perform in that
> environment.

Tr. 272-73.

The ALJ rejected Dr. Naibert's opinion on the ground

that his opinion was contradicted by Dr. Swan, who opined

Plaintiff's anxiety and depression responded well to medication

and Plaintiff could work in an environment that was less

stressful than his past work.  Tr. 199, 274, 372.

Dr. Naibert's opinion is also contradicted by that of Jack W.

Davies, Psy.D., examining psychologist.  On February 11, 2002,

Dr. Davies conducted a psychological evaluation of Plaintiff and

noted Plaintiff's "depression and anxiety scales are within

normal limits, consistent with clinical observations that

medications have moved his depression into remission."  Tr. 158.

Dr. Davies concluded

> [Plaintiff's] difficulties with attendance,
> attributed to diverticulitis, were largely
> somatoform fluctuations in his untreated
> depressive disease.  His difficulties emerged when
> he went off the antidepressants, and they
> essentially resolved . . . when the antidepressant
> therapy was restarted.  His difficulties
> recovering from "illness and injury" in the past
> additionally improved when his emotional state was
> appropriately treated, a pattern that has been
> repeated.

Tr. 159.  The ALJ noted Dr. Naibert's opinion was inconsistent

with his examination findings.  For example, on June 19, 2002,

Dr. Naibert stated Plaintiff "overall . . . thinks he is doing

quite a bit better" and reports he "feel[s] real calm, with the

exception of intermittent spells" that last "a relatively few minutes." Tr. 202. Dr. Naibert noted, "[W]e will continue [Plaintiff] off work as I would like him as best as we can before we send him back to work." Tr. 202. On April 25, 2007, Plaintiff reported to Dr. Naibert that he had the "overall feeling that he is doing quite well." Tr. 499. On February 22, 2007, Dr. Naibert noted Plaintiff was "doing quite well, with the exception of his mood down, with increased anxiety, ever since he was turned down . . . for Social Security." Tr. 501.

On this record, the Court concludes the ALJ did not err when he rejected Dr. Naibert's opinion that Plaintiff is incapable of working because the ALJ provided clear and convincing reasons based on substantial evidence in the record for doing so.

**III. The ALJ did not err at Step Five when he found Plaintiff capable of performing other work that exists in the national economy.**

At Step Five, the Commissioner must show the claimant can do other work that exists in the national economy. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The Commissioner can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all of the claimant's limitations. *Id.* The hypothetical posed to a VE must include

those limitations supported by substantial evidence in the
record. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 883, 866 (9th Cir.
2006).

The ALJ found Plaintiff capable of performing other work
that exists in the national economy such as a janitor, industrial
cleaner, and landscaping laborer.  Tr. 374.

Plaintiff contends the ALJ erred when he concluded Plaintiff
could perform the work of a janitor because the Dictionary of
Occupational Titles assigns janitorial work a specific,
vocational preparation (SVP) value of three, which is considered
a semi-skilled position, and the ALJ did not find Plaintiff had
transferrable skills that would allow him to perform work that
requires an SVP value of three.  Although Defendant appears to
concede that the ALJ erred when he concluded Plaintiff could
perform work as a janitor in light of the fact that Plaintiff
does not have the transferrable skills to perform a position with
an SVP value of three, Defendant notes the error is not
dispositive because the ALJ also found Plaintiff could perform
work as an industrial cleaner and landscaping laborer, both of
which have an SVP of two and do not require transferrable skills.

On this record, the Court finds the ALJ erred when he
concluded Plaintiff could perform work as a janitor.  The Court
however, concludes the ALJ's error as to Plaintiff's ability to
perform work as a janitor is not dispositive because the ALJ did

not err when he found Plaintiff could perform work as an
industrial cleaner or landscaping laborer.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the decision of the
Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 1st day of February, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

20 - OPINION AND ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERNEST R. BOND,                                08-CV-6349-BR

       Plaintiff,                          OPINION AND ORDER
                                               Portland Division

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


RICHARD F. MCGINTY
McGinty & Belcher, PC
P.O. Box 12806
Salem, OR 97309
(503) 371-9636

       Attorneys for Plaintiff

KENT ROBINSON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1053

1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
Social Security Administration
**MICHAEL S. HOWARD**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104
(206) 615-2240

       Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff Ernest R. Bond seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

      Plaintiff filed an application for DIB on December 1, 2003, alleging a disability onset date of January 5, 2002. Tr. 65.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a

---

      [1] Citations to the official transcript of record filed by the Commissioner on March 19, 2009, are referred to as "Tr."

2 - OPINION AND ORDER

hearing on July 25, 2006.  Tr. 342-59.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on August 16, 2006, in which he found Plaintiff was not disabled and, therefore, was not entitled to benefits.  Tr. 11-30.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on October 26, 2006, when the Appeals Council denied Plaintiff's request for review.  Plaintiff appealed the decision of the Commissioner to this Court.

On September 25, 2007, pursuant to the parties' stipulation, Magistrate Judge John Jelderks issued an Order in which he remanded the matter for further proceedings and directed the ALJ to "(1) further evaluate the finding that Plaintiff has a diagnosis of somatoform disorder secondary to malingering; (2) further evaluate and weigh all of the medical evidence; and (3) further evaluate the Plaintiff's subjective complaints." Tr. 409-10.

On remand the ALJ conducted a hearing on April 9, 2008. Plaintiff and a VE testified.  The ALJ issued a decision on August 28, 2008, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 360-75.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.

3 - OPINION AND ORDER

**BACKGROUND**

Plaintiff was born on April 13, 1954; was 52 years old at the time of the first hearing; and was 53 years old at the time of the second hearing. Tr. 65-67. Plaintiff completed high school and some college courses. Tr. 80, 170. Plaintiff has past relevant work experience as a mill-yard crew worker and supply clerk. Tr. 352-53.

Plaintiff alleges disability due to "depression, stress, [and] anxiety." Tr. 75.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 366-73.

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841

4 - OPINION AND ORDER

(9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

**I.   The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially
dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*,
454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.
§ 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d
at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commis-
sioner determines the claimant's impairments meet or equal
one of a number of listed impairments that the Commissioner
acknowledges are so severe as to preclude substantial gainful
activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R.
§ 404.1520(a)(4)(iii).  The criteria for the listed impairments,
known as Listings, are enumerated in 20 C.F.R. part 404,
subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's RFC.  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Soc. Sec. Ruling (SSR) 96-8p.  A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20

7 - OPINION AND ORDER

C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the

Commissioner to show a significant number of jobs exist in the

national economy that the claimant can do.  *Tackett v. Apfel*, 180

F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy

this burden through the testimony of a VE or by reference to the

Medical-Vocational Guidelines set forth in the regulations at

20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner

meets this burden, the claimant is not disabled.  20 C.F.R.

§ 404.1520(g)(1).


## **ALJ'S FINDINGS**

On remand at Step One, the ALJ found Plaintiff has not

engaged in substantial gainful activity since January 5, 2002.

Tr. 365.

At Step Two, the ALJ found Plaintiff has the severe

impairments of anxiety disorder, somatoform disorder, and

personality disorder.  Tr. 365.

At Step Three, the ALJ concluded Plaintiff's medically

determinable impairments do not meet or medically equal one of

the listed impairments in 20 C.F.R. part 404, subpart P, appendix

1.  Tr. 20.  The ALJ found Plaintiff has the RFC "to perform a

full range of work at all exertional levels, but with the

following nonexertional limitations:  self paced work requiring

no more than occasional contact with supervisors or the general

8 - OPINION AND ORDER

public."  Tr. 368.

At Step Four, the ALJ found Plaintiff is not capable of performing his past relevant work.  Tr. 373.

At Step Five, the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 374.  Accordingly, the ALJ found Plaintiff is not disabled.

<u>**DISCUSSION**</u>

Plaintiff contends the ALJ erred when he (1) improperly rejected Plaintiff's testimony; (2) improperly rejected the opinions of Plaintiff's examining and treating physicians; and (3) found Plaintiff can perform jobs that exist in significant numbers in the national economy.

**I.    The ALJ did not err at Step Three when he rejected Plaintiff's testimony as to the intensity, persistence, and limiting effects of Plaintiff's impairments.**

Plaintiff alleges the ALJ erred at Step Three when he failed to provide clear and convincing reasons for rejecting Plaintiff's testimony as to the intensity, persistence, and limiting effects of Plaintiff's impairments.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to

9 - OPINION AND ORDER

produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ found Plaintiff's medically determinable impairments reasonably could be "expected to produce the alleged symptoms. However, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible."  Tr. 368.

The ALJ noted Leslie Pitchford, Ph.D., examining psychologist, conducted a neuropsychological evaluation of Plaintiff on May 3, 2006, and subsequently found Plaintiff performed poorly on purpose.  Tr. 311.  Dr. Pitchford concluded Plaintiff's "test results indicated [he] has not been straight-forward. . . .  [Plaintiff] indicated that a social security

award will allow him to receive his company pension now, rather
than 10 years from now.  He may be exaggerating his difficulties
in hopes of obtaining that benefit."  Tr. 312.  Similarly, Eugene
E. Klecan, M.D., examining physician, conducted a psychiatric
evaluation of Plaintiff on March 6, 2002, and concluded
Plaintiff's subjective complaints "greatly exceed[ed] objective
findings."  He opined "secondary gains and even primary gains are
present."  Tr. 179.  Dr. Klecan noted Plaintiff's condition is
medically stationary, and "no improvement is likely or for that
matter necessary.  [Plaintiff] is as capable now of working at
his regular job as he was prior to 1-21-02, indeed as he was one
year ago and five years ago, and has no rateable permanent
psychiatric impairments."  Tr. 181.  On March 5, 2003, James R.
Naibert, M.D., treating physician, reported Plaintiff's stated
goal of retiring on disability, and "[h]is long term goal is to
buy a place up in the mountains, retire and do a lot of fishing."
Tr. 192.  The ALJ noted Christopher Swan, M.D., treating
physician, opined a number of times that even though Plaintiff is
incapable of returning to his past work, he is capable of doing
work that is not "high pressure stressful-type work."  Tr. 184,
186, 190.

On this record, the Court concludes the ALJ did not err when
he rejected Plaintiff's testimony as to the intensity,
persistence, and limiting effects of Plaintiff's impairments

because the ALJ provided legally sufficient reasons supported by the record for doing so.

## II. The ALJ did not err when he rejected the opinions of Drs. Kallemeyn, Cochran, and Naibert.

Plaintiff contends the ALJ erred when he rejected the opinions of Maribeth Kallemeyn, Ph.D., examining psychologist; John Cochran, Ph.D., examining psychologist; and Dr. Naibert, treating physician.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the

12 - OPINION AND ORDER

nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

**A.    Dr. Kallemeyn**

On February 9, 2004, Dr. Kallemeyn conducted a psychodiagnostic evaluation of Plaintiff. Based on Plaintiff's self-report, Dr. Kallemeyn opined Plaintiff's "symptoms are seriously impacting his daily activities, specifically in the area of seeking and engaging in employment. It appears that his anxiety and anxiety-related avoidance are the primary barriers to employment at this point." Tr. 239-40. Dr. Kallemeyn concluded "[i]t does appear that his anxiety may need to be better controlled in order to enable him to begin to approach rather than avoid the possibility of employment" and assessed Plaintiff with a GAF of 50.² A GAF of 50 indicates serious symptoms or serious impairments in social or occupational functioning.

The ALJ rejected Dr. Kallemeyn's assessment of Plaintiff's GAF because, *inter alia,* Plaintiff's mental-status

---

² The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, few friends, unable to keep a job).

examination did not reveal any evidence of serious symptoms or impairments.  Tr. 371.  The ALJ also noted lay witness Robert Adams testified that he and Plaintiff spent five or ten hours a week together doing activities such as fishing and target shooting and that Plaintiff has daily, "normal" interactions with neighbors and friends.  Tr. 86-91.

The ALJ also found Dr. Kallemeyn's assessment is contradicted by Dr. Swan, treating physician, who opines in his treatment notes that Plaintiff is only precluded from performing his past work.  Tr. 371.

On this record, the Court concludes the ALJ did not err when he rejected Dr. Kallemeyn's assessment of Plaintiff's GAF at 50 because the ALJ provided clear and convincing reasons based on substantial evidence in the record for doing so.

**B.    Dr. Cochran**

On April 28, 2006, Dr. Cochran conducted a psychiatric evaluation of Plaintiff and opined Plaintiff suffered moderately severe[3] difficulties performing activities within a schedule**,** maintaining regular attendance, sustaining an ordinary routine without special supervision, working in coordination with or in

---

[3] The form used by Dr. Cochran defines "moderately severe" as "able to perform designated task or function, but has or will have noticeable difficulty (distracted from job activity) more than 20 percent of the work day or work week (*i.e.*, 1 ½ hours per day or 1 day per week up to two hours/day or one-half to one day/week."  Tr. 340.

14 - OPINION AND ORDER

proximity to others without being distracted by them, "completing
a normal workday and workweek without interruptions from
psychological based symptoms and to perform at a consistent pace
without an unreasonable number and length of rest periods,"
interacting appropriately with the general public, accepting
instructions and responding appropriately to criticism from
supervisors, getting along with coworkers or peers without
distracting them or exhibiting behavioral extremes, maintaining
socially appropriate behavior and adhering to basic standards of
neatness and cleanliness, responding appropriately to changes in
the work setting, traveling to unfamiliar places or using public
transportation, and setting realistic goals.  Tr. 340-41.
Dr. Cochran assessed Plaintiff with a GAF of 50.

The ALJ rejected Dr. Cochran's opinions and noted he did not
address or acknowledge Plaintiff's credibility issues including
Plaintiff's tendency to exaggerate symptoms or his secondary gain
motivation.  The ALJ also noted Dr. Cochran's opinion was
contradicted by Dr. Swan, who found Plaintiff is capable of work
that is not high-stress, including work in a parts department,
supply management work, or clerical work.  Tr. 372.  In addition,
although Dr. Cochran opined Plaintiff suffered moderately serious
difficulty "adhering to basic standards of neatness and
cleanliness," Dr. Cochran observed Plaintiff was "well groomed."
Moreover, Plaintiff did not allege difficulty with grooming or

15 - OPINION AND ORDER

hygiene.  Tr. 333.  As noted, Robert Adams testified he and
Plaintiff spent five to ten hours a week together doing
activities such as fishing and target shooting and Plaintiff has
daily, "normal" interactions with neighbors and friends.
Plaintiff's interactions contradict Dr. Cochran's opinion that
Plaintiff suffers moderately severe difficulty interacting
appropriately with the general public, getting along with peers
without distracting them or exhibiting behavioral extremes, and
maintaining socially appropriate behavior.

On this record, the Court concludes the ALJ did not err
when he rejected Dr. Cochran's opinion because the ALJ provided
clear and convincing reasons based on substantial evidence in the
record for doing so.

### C.  Dr. Naibert

On July 12, 2004, Dr. Naibert opined Plaintiff

> has been unable to work due to his anxiety
> disorder and his depressive symptomology, and I do
> not feel that he will ever really be able to work,
> certainly not in a competitive work environment
> . . . .  I do not foresee that [Plaintiff] will
> improve enough to ever be fully employable, even
> though if he had a very sedate, very ordered, and
> nonactive job he may be able to perform in that
> environment.

Tr. 272-73.

The ALJ rejected Dr. Naibert's opinion on the ground

that his opinion was contradicted by Dr. Swan, who opined

Plaintiff's anxiety and depression responded well to medication

and Plaintiff could work in an environment that was less

stressful than his past work.  Tr. 199, 274, 372.

Dr. Naibert's opinion is also contradicted by that of Jack W.

Davies, Psy.D., examining psychologist.  On February 11, 2002,

Dr. Davies conducted a psychological evaluation of Plaintiff and

noted Plaintiff's "depression and anxiety scales are within

normal limits, consistent with clinical observations that

medications have moved his depression into remission."  Tr. 158.

Dr. Davies concluded

>            [Plaintiff's] difficulties with attendance,
>            attributed to diverticulitis, were largely
>            somatoform fluctuations in his untreated
>            depressive disease.  His difficulties emerged when
>            he went off the antidepressants, and they
>            essentially resolved . . . when the antidepressant
>            therapy was restarted.  His difficulties
>            recovering from "illness and injury" in the past
>            additionally improved when his emotional state was
>            appropriately treated, a pattern that has been
>            repeated.

Tr. 159.  The ALJ noted Dr. Naibert's opinion was inconsistent

with his examination findings.  For example, on June 19, 2002,

Dr. Naibert stated Plaintiff "overall . . . thinks he is doing

quite a bit better" and reports he "feel[s] real calm, with the

17 - OPINION AND ORDER

exception of intermittent spells" that last "a relatively few minutes." Tr. 202. Dr. Naibert noted, "[W]e will continue [Plaintiff] off work as I would like him as best as we can before we send him back to work." Tr. 202. On April 25, 2007, Plaintiff reported to Dr. Naibert that he had the "overall feeling that he is doing quite well." Tr. 499. On February 22, 2007, Dr. Naibert noted Plaintiff was "doing quite well, with the exception of his mood down, with increased anxiety, ever since he was turned down . . . for Social Security." Tr. 501.

On this record, the Court concludes the ALJ did not err when he rejected Dr. Naibert's opinion that Plaintiff is incapable of working because the ALJ provided clear and convincing reasons based on substantial evidence in the record for doing so.

**III. The ALJ did not err at Step Five when he found Plaintiff capable of performing other work that exists in the national economy.**

At Step Five, the Commissioner must show the claimant can do other work that exists in the national economy. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The Commissioner can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all of the claimant's limitations. *Id.* The hypothetical posed to a VE must include

those limitations supported by substantial evidence in the
record.  *Robbins v. Soc. Sec. Admin.,* 466 F.3d 883, 866 (9th Cir.
2006).

   The ALJ found Plaintiff capable of performing other work
that exists in the national economy such as a janitor, industrial
cleaner, and landscaping laborer.  Tr. 374.

   Plaintiff contends the ALJ erred when he concluded Plaintiff
could perform the work of a janitor because the Dictionary of
Occupational Titles assigns janitorial work a specific,
vocational preparation (SVP) value of three, which is considered
a semi-skilled position, and the ALJ did not find Plaintiff had
transferrable skills that would allow him to perform work that
requires an SVP value of three.  Although Defendant appears to
concede that the ALJ erred when he concluded Plaintiff could
perform work as a janitor in light of the fact that Plaintiff
does not have the transferrable skills to perform a position with
an SVP value of three, Defendant notes the error is not
dispositive because the ALJ also found Plaintiff could perform
work as an industrial cleaner and landscaping laborer, both of
which have an SVP of two and do not require transferrable skills.

   On this record, the Court finds the ALJ erred when he
concluded Plaintiff could perform work as a janitor.  The Court
however, concludes the ALJ's error as to Plaintiff's ability to
perform work as a janitor is not dispositive because the ALJ did

19 - OPINION AND ORDER

not err when he found Plaintiff could perform work as an
industrial cleaner or landscaping laborer.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the
Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 1st day of February, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

20 - OPINION AND ORDER